# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

JUAN SOTO,

   Plaintiff,

v.

STATE OF NEW JERSEY et al.,

   Defendants.

Civ. No. 17-13450 (FLW) (DEA)

**OPINION**

**FREDA L. WOLFSON, U.S.D.J.**

## I.  INTRODUCTION

Plaintiff *pro se*, Juan Soto ("Soto" or "Plaintiff"), a state prisoner incarcerated at New Jersey State Prison, in Trenton, New Jersey, filed this civil rights action against Defendants, the State of New Jersey ("the State"), the New Jersey Department of Correction ("the NJDOC"), D. Borg ("Borg"), and B. Patoe ("Patoe") (collectively, "Defendants"), asserting various constitutional claims under 42 U.S.C. § 1983. (Compl., ECF No. 1-1.) Upon a motion by Defendants, the Court previously dismissed the Complaint for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). (*See* ECF Nos. 3, 6, 7, & 8.) Soto subsequently filed an Amended Complaint against the same defendants. (ECF No. 9.) Presently before the Court is Defendants' motion to dismiss the Amended Complaint with prejudice for failure to state a claim under Rule 12(b)(6). (ECF No. 12.) For the following reasons, the motion is GRANTED insofar as all claims against the State and the NJDOC and the damages claims against Borg and Patoe in their official capacities are dismissed with prejudice, and the remainder of Soto's claims are dismissed without prejudice.

## II. BACKGROUND AND ALLEGATIONS

On November 1, 2017, Soto filed his original Complaint in the Superior Court of New Jersey, Law Division, Mercer County. (ECF No. 1-1.) The Complaint included a single claim, in which Soto alleged that, on April 28, 2016, he "was arbitrarily, capriciously and unlawfully removed from general population and locked up and placed on Temporary Close Custody ("TCC") in the Institution's Detention Segregation Close Custody Unit until May 5, 2016 in clear violation of [his] United States Constitutional Rights under the 8th, 14th Amendment and N.J.A.C. 10A:5-7.1."[1] (*Id.* ¶ 4.) On December 21, 2017, Defendants removed the action to this Court under 28 U.S.C. § 1331. (Notice of Removal, ECF No. 1.) Defendants thereafter filed a motion to dismiss the Complaint, which Soto opposed. (*See* ECF Nos. 3 & 6.)

On August 23, 2018, I issued an Opinion and Order granting Defendants' dismissal motion. (*See* ECF Nos. 7 & 8.) Specifically, I noted that the State and its agencies, as well as State employees in their official capacities to the extent they are sued for money damages, are not subject to suit under 42 U.S.C. § 1983. Accordingly, I dismissed such claims with prejudice. (*See* ECF No. 7 at 4–7.) I further noted that Soto had failed to alleged any personal involvement by Borg and Patoe in any purported wrongdoing. Thus, I dismissed the remaining claims without prejudice, for failure to state a claim. (*Id.* at 7–8.) I granted Soto leave to file an Amended Complaint within 30 days to address the deficiencies identified as the bases for dismissal. (ECF No. 7 at 8; ECF No. 8.)

---

[1] New Jersey Administrative Code § ("N.J.A.C.") 10A:5-7.1 sets forth various administrative regulations regarding the placement of inmates in temporary close custody. *See* N.J.A.C. 10A:5-7.1.

On September 19, 2018, Soto filed an Amended Complaint against the same defendants, including state entities that were previously dismissed.[2] (ECF No. 9.) As in the original Complaint, Soto asserts that his placement in temporary close custody from April 28 to May 5 of 2016 was arbitrary and capricious and violated his due-process and equal-protection rights. (*Id.* ¶¶ 14, 17–18, 21, 39–46.) He newly alleges that he was "illegally removed from general population on the orders of [Patoe]" and that the "illegal and unlawful placement was approved and authorized by [Borg]." (*Id.* ¶¶ 10–11.) Soto also now claims that his placement in TCC constituted retaliation for his constitutionally protected activity, namely "refusing to provide statements or talk to Defendants Patoe and Borg concerning gang activity." (*Id.* ¶¶ 22–27, 47–54.) Soto additionally alleges a pattern in the prison of similar retaliation and that "Borg and Patoe are part of a gang of corrupt and rogue correctional officers who engage in deceitful and unconstitutional practices and retaliatory conduct generally directed toward minorities." (*Id.* ¶ 27.)

Defendants now move to dismiss the Amended Complaint for failure to state a claim, under Rule 12(b)(6). (ECF No. 12.) They argue that the Court previously dismissed with prejudice Soto's claims against the State, the NJDOC, and Borg and Patoe in their official capacities, thus barring Soto from reasserting such claims. (Br. in Supp., ECF No. 12-1, at 5–6.) Defendants further contend that the Amended Complaint fails to state a due-process claim concerning Soto's placement in TCC, as prisoners have no liberty interest in their housing assignments. (*Id.* at 7–8.) They argue that Soto has similarly failed to plead the elements of a retaliation claim. (*Id.* at 8–10.) Defendants assert that it may be inferred from the Amended Complaint that Soto was placed in TCC for security reasons. (*Id.* at 2, 10.)

---

[2] Indeed, Soto specifies that he is suing Borg and Patoe in both their official and individual capacities. (*See* ECF No. 9 ¶¶ 4–5.)

In opposition, Soto argues generally that he has asserted sufficient facts to state a claim. (*See* ECF No. 13.) He further urges that "[o]nce discovery is completed and the record fully developed the evidence will be overwhelming and will demonstrate facts and evidence to support constitutional violations and in particular the fact that Defendants violated the constitutional rights of Plaintiff." (*See* ECF No. 13 at 11.)

### III. LEGAL STANDARD

In reviewing a motion to dismiss for failure to state a claim upon which relief may be granted, under Federal Rule of Civil Procedure 12(b)(6), "courts accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (internal quotation marks omitted). Although Federal Rule of Civil Procedure 8(a) does not require that a complaint contain detailed factual allegations, "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (alteration in original). Thus, to survive a Rule 12(b)(6) motion to dismiss, a complaint must contain sufficient factual allegations to raise a plaintiff's right to relief above the speculative level, so that a claim is "plausible on its face." *Id.* at 570; *Phillips v. County of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). While the "plausibility standard is not akin to a 'probability requirement,' . . . it asks for more than a sheer possibility that defendant had acted unlawfully." *Id.*

In applying the *Twombly* and *Iqbal* pleading standards, the Third Circuit has formulated "a three-step process for district courts to follow in reviewing the sufficiency of a complaint." *Robinson v. Family Dollar Inc*, 679 F. App'x 126, 131 (3d Cir. 2017); *see also Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 787 (3d Cir. 2016). First, the reviewing court "must take note of the elements the plaintiff must plead to state a claim." *Connelly*, 809 F.3d at 787 (internal quotation marks and brackets omitted). Next, the court "should identify allegations that, because they are no more than conclusions, are not entitled to the assumption of truth." *Id.* (internal quotation marks omitted). Lastly, "when there are well-pleaded factual allegations, the court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* (internal quotation marks and brackets omitted). This final plausibility analysis is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

Here, Soto is proceeding *pro se*. "The obligation to liberally construe a *pro se* litigant's pleadings is well-established." *Higgs v. Att'y Gen. of U.S.*, 655 F.3d 333, 339 (3d Cir. 2011); *see also Estelle v. Gamble*, 429 U.S. 97, 106 (1976); *Haines v. Kerner*, 404 U.S. 519, 520–21 (1972). "Courts are to construe complaints so as to do substantial justice, keeping in mind that *pro se* complaints in particular should be construed liberally." *Alston v. Parker*, 363 F.3d 229, 234 (3d Cir. 2004) (internal quotation marks and citation omitted). "Liberal construction does not, however, require the Court to credit a pro se plaintiff's 'bald assertions' or 'legal conclusions.'" *Grohs v. Yatauro*, 984 F. Supp. 2d 273, 282 (D.N.J. 2013) (quoting *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997)). "[T]here are limits to [the court's] procedural flexibility. . . . [P]ro se litigants still must allege sufficient facts in their complaints to support a claim." *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 245 (3d Cir. 2013). "Even a

pro se complaint may be dismissed for failure to state a claim if the allegations set forth by the plaintiff cannot be construed as supplying facts to support a claim entitling the plaintiff to relief." *Grohs*, 984 F. Supp. 2d at 282.

## IV. DISCUSSION

### A. 42 U.S.C. § 1983 and the NJCRA Generally

I construe the Complaint as asserting claims under 42 U.S.C. § 1983 and the New Jersey Civil Rights Act ("NJCRA"). Specifically, Soto alleges violations of his rights of due process and freedom of speech under the United States Constitution and the New Jersey Constitution.[3] (*See* ECF No. 13 ¶¶ 39–54.) Section 1983 states, in relevant part,

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable.

42 U.S.C. § 1983. To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution or laws of the United States and that the alleged deprivation was

---

[3] At points in his Amended Complaint, Soto also includes references to the right of equal protection and the constitutional prohibition on cruel and unusual punishment, but he does not seem to have intended these as separate claims and has not stated any facts that would support either type of claim. (*See* ECF No. 13.) Similarly, in his brief in opposition to the dismissal motion, Soto includes a passing mention to alleged denial of access to courts. (*See* ECF No. 13 at 11.) It also does not appear that he intends this as a separate claim, and, in any case, there are no factual allegations to plead such a claim. As such, I will not consider these claims are having been pled in the Amended Complaint.

6

committed or caused by a person acting under color of state law. *See Harvey v. Plains Twp. Police Dep't*, 635 F.3d 606, 609 (3d Cir. 2011); *see also West v. Atkins*, 487 U.S. 42, 48 (1988).

Generally, personal involvement by the defendant in the alleged constitutional violation is central to a § 1983 claim, and liability cannot rest on a theory of *respondeat superior*. *See Chavarriaga v. N.J. Dep't of Corr.*, 806 F.3d 210, 222 (3d Cir. 2015). Supervisory liability generally requires some affirmative conduct by the supervisor, such as a supervisor's implementation or maintenance of a policy, practice, or custom that caused the plaintiff constitutional harm. *Parkell v. Danberg*, 833 F.3d 313, 330 (3d Cir. 2016); *Santiago v. Warminster Township*, 629 F.3d 121, 129 n.5 (3d Cir. 2010).

The NJCRA provides a similar cause of action to § 1983, stating, in relevant part,

> Any person who has been deprived of any substantive due process or equal protection rights, privileges or immunities secured by the Constitution or laws of the United States, or any substantive rights, privileges or immunities secured by the Constitution or laws of this State, or whose exercise or enjoyment of those substantive rights, privileges or immunities has been interfered with or attempted to be interfered with, by threats, intimidation or coercion by a person acting under color of law, may bring a civil action for damages and for injunctive or other appropriate relief.

N.J. Stat. Ann. § 10:6-2(c). Due to the intentional statutory similarities, this provision "is interpreted as analogous to § 1983." *Szemple v. Corr. Med. Servs., Inc.*, 493 F. App'x 238, 241 (3d Cir. 2012) ("To sustain a § 1983 claim, or a NJCRA claim, a plaintiff must show that a defendant had in place a custom or policy which resulted in constitutional deprivation.").

**B. Soto's Claims Against the State and Defendants in Their Official Capacities**

On the prior dismissal motion, all claims against the State and the NJDOC and claims for money damages against Borg and Patoe in their official capacities were dismissed with prejudice. (*See* ECF Nos. 7 & 8.) Despite this, Soto has attempted to reassert claims against

7

those Defendants. As the Court previously explained, "a state is not a 'person' within the meaning of § 1983." *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 65–66 (1989). Furthermore, as a claim against a state official in his or her official capacity is essentially a claim against the state, § 1983 claims are not permitted against state officials in their official capacities, except to the extent that such claims seek prospective injunctive relief. (*Id.* at 71 & n.10.) Accordingly, Soto's attempt to reassert these claims must fail. The claims against the State and the NJDOC and the claims for money damages against Borg and Patoe in their official capacities are again dismissed with prejudice.

### C. Soto's Due-Process Claim

Soto alleges that Borg and Patoe's decision to place him in TCC, a type of administrative segregation, for approximately a week, violated his right to due process. Defendants argue that he has failed to plead a protected liberty interest for the purposes of a due-process claim.

The procedural Due Process Clause of the Fourteenth Amendment constrains government actions that affect a person's liberty or property interests under that Amendment. *See Mathews v. Eldridge*, 424 U.S. 319, 332 (1976). Accordingly, the Court must first determine whether the asserted interest is protected by the Due Process Clause. *See Shoats v. Horn*, 213 F.3d 140, 143 (3d Cir. 2000); *see also Fuentes v. Shevin*, 407 U.S. 67, 84 (1972) ("The right to a prior hearing, of course, attaches only to the deprivation of an interest encompassed within the Fourteenth Amendment's protection."). If a protected interest is shown, the Court then considers what process is constitutionally required to protect it. *Shoats*, 213 F.3d at 143.

A liberty interest may be either inherent under the Constitution or created by state laws or policies. *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005); *Hewitt v. Helms*, 459 U.S. 460, 466 (1983). "The Due Process Clause standing alone confers no liberty interest in freedom from

8

state action taken within the sentence imposed," generally including transfer to less desirable conditions of confinement. *Sandin v. Conner*, 515 U.S. 472, 480 (1995) (internal quotation marks omitted); *see also Austin*, 545 U.S. at 221; *Meachum v. Fano*, 427 U.S. 215, 225 (1976). The mere fact that a condition is imposed upon a prisoner as a disciplinary sanction does not mean that it implicates a liberty interest. *Sandin*, 515 U.S. at 483–84. Nevertheless, "a liberty interest in avoiding particular conditions of confinement may arise from state policies or regulations, subject to the important limitations set forth [by the Supreme Court] in *Sandin v. Conner*." *Austin*, 545 U.S. at 222. The "touchstone of that inquiry" is an examination of the particular condition of confinement "'in relation to the ordinary incidents of prison life.'" *Austin*, 545 U.S. at 223 (quoting *Sandin*, 515 U.S. at 484). The *Sandin* Court found no liberty interest implicated by placement for 30 days in administrative segregation, as it did not "present a dramatic departure from the basic conditions of [the prisoner's] sentence." 515 U.S. at 485. Under *Sandin*, a prisoner asserting a liberty interest implicated by particular conditions of confinement must allege that they "impose[] atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Id.* at 484; *see also Austin*, 545 U.S. at 223.

The Court of Appeals for the Third Circuit has thus noted that "placement in administrative confinement will generally not create a liberty interest." *Allah v. Seiverling*, 229 F.3d 220, 224 (3d Cir. 2000). Liberty interests will only be implicated by a term of administrative segregation "if it dramatically departs, in length of time or otherwise, from basic prison conditions." *Crawford v. Lappin*, 446 F. App'x 413, 415 (3d Cir. 2011). Therefore, "[i]n determining whether a protected liberty interest exists, the court must consider: (1) the duration of the disciplinary confinement; and (2) whether the conditions of confinement were

9

significantly more restrictive than those imposed upon other inmates." *Huertas v. Sec'y Pa. Dep't of Corr.*, 533 F. App'x 64, 66 (3d Cir. 2013); *see also Shoats*, 213 F.3d at 144.

With regard to his due-process claim, Soto alleges simply that, upon Patoe's order and with Borg's approval, he was removed from the prison's general population on April 28, 2016, and placed in TCC, where he remained until May 5, 2016. (ECF No. 9 ¶¶ 10–14.) While Soto includes various conclusory and bald assertions that this placement was unlawful and arbitrary and capricious, he pleads no further *facts* that would support a finding that his transfer from general population to TCC for eight days implicated his liberty interests.[4] (*See* ECF No. 9.) He does not, for instance, include any allegations concerning in what ways or to what extent his conditions of confinement in TCC were more restrictive than those to which he was typically subjected as a member of the general population.[5] Given the brief duration of Soto's time in TCC and the Amended Complaint's lack of any allegations from which the Court could infer that the conditions to which he was subject during that time "imposed [an] atypical and significant hardship," I find that Soto has failed to plead any implicated liberty interest for the purposes of

---

[4] As Soto himself has noted in his opposition brief, "[t]he Court must separate the factual allegations from any legal conclusions and decide whether the factual allegations, taken as true, state a plausible claim for relief." (ECF No. 13 at 12 (citing *Ocasio-Hernández v. Fortuño-Burset*, 640 F.3d 1, 10–11 (3d Cir. 2011)).)

[5] Although Soto newly alleges in his opposition brief that he also lost his institutional job, a party may not amend a pleading by way of allegations in an opposition brief. *See Frederico v. Home Depot*, 507 F.3d 188, 201–02 (3d Cir. 2007). In any case, it is well established that a prisoner has no constitutionally protected interest in an institutional job. *See Rhodes v. Chapman*, 452 U.S. 337, 348 (1981).

his due-process claim. *See Sandin*, 515 U.S. 484. Consequently, this claim is dismissed for failure to state a claim.

### D. Soto's Retaliation Claim

Soto also now frames his allegations concerning his placement in TCC as a claim for retaliation. As noted above, Defendants contend that Soto has not pleaded any of the elements of a retaliation claim.

An incarcerated plaintiff pleads a claim for retaliation by alleging that "(1) he engaged in constitutionally protected conduct[,] (2) he suffered an adverse action[,] and (3) the constitutionally protected conduct was a substantial or motivating factor for the adverse action." *Brant v. Varano*, 717 F. App'x 146, 149 (3d Cir. 2017); *see also Rauser v. Horn*, 241 F.3d 330, 333–34 (3d Cir. 2001). "'[G]overnment actions, which standing alone do not violate the Constitution, may nonetheless be constitutional torts if motivated in substantial part by a desire to punish an individual for exercise of a constitutional right.'" *Allah*, 229 F.3d at 224–25 (alteration in original) (quoting *Thaddeus-X v. Blatter*, 175 F.3d 378, 386 (6th Cir. 1999)); *see also Mitchell v. Horn*, 318 F.3d 523, 530 (3d Cir. 2003). An action is considered adverse if it would be "sufficient to deter a person of ordinary firmness from exercising his constitutional rights." *Mack v. Warden Loretto FCI*, 839 F.3d 286, 297 (3d Cir. 2016); *see also Watson v. Rozum*, 834 F.3d 417, 422 n.6 (3d Cir. 2016); *Mitchell*, 318 F.3d at 530. Whether the action in question meets this standard "is an objective inquiry and ultimately a question of fact." *Bistrian v. Levi*, 696 F.3d 352, 376 (3d Cir. 2012); *see also Allah*, 229 F.3d at 225.

Once a plaintiff has shown evidence of protected conduct and an adverse action, the question become showing a causal link between the two. *See Rauser*, 241 F.3d at 333. At that stage, the plaintiff first bears the burden to show that the protected conduct was a "substantial or

11

motivating factor" underlying the adverse action, and the burden then shifts to the defendant to show that it would have taken the same action regardless of the plaintiff's protected conduct. *Id; see also Watson*, 834 F.3d at 831. Where a causal link cannot be shown with direct evidence, a plaintiff may try to satisfy the initial burden by demonstrating "(1) an unusually suggestive temporal proximity between the protected activity and the allegedly retaliatory action, or (2) a pattern of antagonism coupled with timing that suggests a causal link." *Watson*, 834 F.3d at 422.

Soto's Amended Complaint fails to adequately plead a retaliation claim, as he has not alleged facts to support a showing that his brief placement in TCC constituted an adverse act. In *Allah v. Seiverling*, the Third Circuit has instructed that whether a prisoner's placement in administrative segregation is sufficient to establish an adverse act "will depend on the facts of the particular case." *Allah*, 229 F.3d at 225. The *Allah* Court found that a plaintiff who had been in administrative segregation for at least three months, had adequately pleaded that it constituted an adverse act, as restrictions included "reduced access to phone calls, reduced access to the commissary, reduced access to recreation, confinement in his cell for all but five hours per week, denial of access to rehabilitative programs and, significantly, inadequate access to legal research materials and assistance." *Id.* In contrast with that case, Soto has included no factual allegations as to what, if any, restrictions resulted from his eight-day placement in TCC. (*See* ECF No. 9.) "While a prisoner need not allege much to surmount the second prong of the retaliation analysis, he needs to allege *something*, especially after *Twombly/Iqbal*, to allow the Court to draw the requisite inferences in his favor." *Romero v. Hayman*, Civ. A. No. 09-1401 (KSH), 2015 WL 333357, at *6 (D.N.J. Jan. 23, 2015) (dismissing retaliation claim as the plaintiff failed to plead adverse act merely by alleging he was placed in administrative segregation for 10 days); *see also Romero v. Hayman*, 486 F. App'x 981, 983 (3d Cir. 2012) (affirming prior dismissal of

Romero's retaliation claim as he "failed to plead both severity of retaliation and the required causal link" but vacating to the extent dismissal was with prejudice and remanding to permit Romero an opportunity to amend). As Soto has failed to allege facts that could sufficiently show an adverse act, I will dismiss, without prejudice, his retaliation claim without reaching the other elements.[6]

## V. CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss the Complaint in this action, (ECF No. 12), is GRANTED insofar as described herein. The § 1983 claims against the State, NJDOC, and Borg and Patoe in their official capacities, except to the extent that Soto seeks prospective injunctive relief from Borg and Patoe, are again DISMISSED WITH PREJUDICE. All remaining claims are DISMISSED WITHOUT PREJUDICE for failure to state a claim upon which relief may be granted. Soto is granted a limited leave to file, within 30 days, an amended pleading that addresses the deficiencies identified herein. This leave to amend, however, is narrowly restricted. Soto may not again assert claims against the State or the NJDOC, nor may he assert damages claims against Borg and Patoe in their official capacities, as those claims have now been twice dismissed with prejudice. Leave to amend is granted only insofar as Soto seeks to plead more facts in support of his claims for due-process violations and retaliation against Borg and Patoe in their individual capacities. If Soto seeks to add new claims or additional defendants, or to make any other amendments that fall outside of the narrow leave now granted,

---

[6] I note, however, that, while the First Amendment right to free speech encompasses a protection against compelled speech, *see C.N. v. Ridgewood Bd. of Educ.*, 430 F.3d 159, at 187–89 (3d Cir. 2005), the free-speech rights of a prisoner are necessarily limited to those "that are not inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system," *Pell v. Procunier*, 417 U.S. 817, 822 (1974). The parties did not substantively address this interplay in their briefing.

he must file a motion for leave to amend in conformance with Federal Rule of Civil Procedure 15.

An appropriate order follows.

DATED: April 18, 2019

/s/ Freda L. Wolfson
FREDA L. WOLFSON
United States District Judge