**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

_____

JUAN SOTO,                                    :
                                              :
                    Plaintiff,                :          Civ. No. 17-13450 (FLW) (DEA)
                                              :
          v.                                  :
                                              :
STATE OF NEW JERSEY et al.,                   :          **OPINION**
                                              :
                    Defendants.               :
_____     :


**FREDA L. WOLFSON, Chief U.S.D.J.**

      Plaintiff, Juan Soto ("Plaintiff"), is proceeding *pro se* with this civil rights action under 42 U.S.C. § 1983 and state law against Defendants D. Borg ("Borg") and B. Patoe ("Patoe") (collectively, "Moving Defendants"). Presently before the Court is Defendants' motion to dismiss the Third Amended Complaint for failure to state a claim under Rule 12(b)(6). (ECF No. 25.) For the reasons explained in this Opinion, the Court grants the motion to dismiss as to the federal claims, denies further leave to amend in this action, declines supplemental jurisdiction over the state law claims, and remands the matter to state court for adjudication of any remaining state law claims.

    I.      **FACTUAL BACKGROUND & PROCEDURAL HISTORY**

      a.  **Plaintiff's Prior Complaints**

      Plaintiff filed his Original Complaint in state court on December 6, 2017. (ECF No. 1-1.) The Complaint arose from Plaintiff's removal from general population at New Jersey State Prison ("NJSP") in April 2016 and his placement in Temporary Close Custody ("TCC") for 8 days. Plaintiff claimed this act violated due process and equal protection of the law under the

Fourteenth Amendment, as well as the Eighth Amendment prohibition on cruel and unusual punishment.  (*See* Original Complaint at ¶¶ 3-7.)

Moving Defendants, along with Defendants State of New Jersey and New Jersey Department of Corrections ("NJDOC") (collectively "State Defendants") removed the action to federal court and moved to dismiss the matter on January 8, 2018.  (ECF No. 3.)  On August 23, 2018, I granted a motion by State Defendants to dismiss Plaintiff's Original Complaint.  (*See* ECF Nos. 7 & 8.)  I dismissed with prejudice the damages claims against the State, NJDOC, and Borg and Patoe in their official capacities and dismissed without prejudice the claims against Borg and Patoe in their personal capacities, as Plaintiff had failed include sufficient factual allegations regarding how those Defendants were involved in Plaintiff's removal from general custody and placement in TCC on April 28, 2016.  (*Id.*)  I granted Plaintiff leave to file an amended complaint to address the deficiencies in his Original Complaint.  (*Id.*)

Plaintiff thereafter filed an Amended Complaint (ECF No. 9), and the State Defendants moved to dismiss the Amended Complaint on October 9, 2018.  On April 18, 2019, I granted a motion by the State Defendants to dismiss the Amended Complaint.  (ECF Nos. 14 & 15.)  I again dismissed with prejudice claims seeking damages from the State and from Borg and Patoe in their official capacities.  (*Id.*)  I dismissed the remaining claims without prejudice, finding that Plaintiff had again failed to state a claim upon which relief could be granted.  (*Id.*)  Specifically, with regard to Plaintiff's due-process claim, I found that Plaintiff had failed to plead any facts establishing that an eight-day placement in TCC on April 28, 2016, implicated a liberty interest. (*See* ECF No. 14 at 10.)  I further concluded that Plaintiff had failed to provide sufficient factual allegations showing a sufficiently adverse action to sustain a First Amendment retaliation claim. (*See id.* at 12.)  I again granted Plaintiff leave to amend within 30 days "only insofar as [he]

2

seeks to plead more facts in support of his claims for due-process violations and retaliation against Borg and Patoe in their individual capacities." (*Id.* at 13.)

I subsequently granted a motion by Plaintiff for an additional month to prepare his amended pleading. (*See* ECF Nos. 16 & 17.) On June 19, 2019, Plaintiff filed his Second Amended Complaint. (ECF No. 18.) Plaintiff again raised damages claims against the State and against Borg and Patoe in both their official and individual capacities. (*See id.*) Although the Second Amended Complaint omitted two of the four counts included in the First Amended Complaint, I still construed it as asserting claims for both due-process violations and retaliation for exercise of his constitutional rights. (*See id.*) Plaintiff's Second Amended Complaint appeared to supplement the original claims with new retaliation claims against Borg and Patoe, occurring well after the April 28, 2016 placement in TCC and the filing of the Original Complaint. (*See id.* ¶¶ 19–22.)

I dismissed the Second Amended Complaint at preliminary screening pursuant to 28 U.S.C. § 1915A and 42 U.S.C. § 1997e(c). Because I had twice dismissed with prejudice Plaintiff's claims for damages against the State and Borg and Patoe in their official capacities, *see Will v. Michigan Department of State Police*, 491 U.S. 58 (1989), I dismissed these claims with prejudice and instructed Plaintiff not to make further attempts to reassert similar claims. (ECF No. 20 at 3.)

Turning to Plaintiff's other claims, I noted that the new allegations in the Second Amended Complaint appeared to raise a second retaliation claim, distinct from the original claim that Plaintiff suffered retaliation due to his refusal to talk with prison staff about gang activity. (*Id.*) I nevertheless found that the Second Amended Complaint was subject to dismissal for

failure to state a claim[1] because Plaintiff allegations that the "retaliation [includes] but [is] not limited to adverse housing on the unit, cell relocation moves, job conflict and issues, harassment, intimidation and being bullied by rogue correctional thugs," were too conclusory to state a claim for relief.  (*See id.* at 4 (citing *Ashcroft v. Iqbal*, 556 U.S. 662 (2009); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007)).

I granted Plaintiff one final opportunity to file a pleading within 45 days with factual allegations supporting his original claims for due-process violations and retaliation against Borg and Patoe in their individual capacities arising from the events on or around April 28, 2016.  (*Id.* at 5.)  If Plaintiff sought to make other amendments or supplements to his pleading, I explained that he must file a motion to amend pursuant to Federal Rule of Civil Procedure 15 within that same time frame.  *Id.*

### b.  Plaintiff's Third Amended Complaint

On August 12, 2019, Plaintiff's Third Amended Complaint was docketed. ECF No. 22. In the Third Amended Complaint, Plaintiff asserts that Defendant Patoe removed Plaintiff from general population on April 29, 2016,[2] and placed him in TCC, and Defendant Borg approved the placement.  (Third Amended Complaint at ¶¶ 8-9.)  The placement lasted until May 5, 2016. (*Id.* at ¶ 12.)  According to Plaintiff, there were several gang-related incidents at NJSP at that time, and although Plaintiff was a former gang members, prison officials and inmates knew he

---

[1]  Under the Prison Litigation Reform Act, Pub. L. 104-134, §§ 801–810, 110 Stat. 1321-66 to 1321-77 (Apr. 26, 1996) ("PLRA"), district courts may review prisoner complaints when the prisoner seeks redress against a governmental employee or entity, *see* 28 U.S.C. § 1915A, or asserts a claim concerning prison conditions, *see* 42 U.S.C. § 1997e(c).  The PLRA directs district courts to *sua sponte* dismiss claims that fail to state a claim upon which relief may be granted or suffer other specific defects.  *See* 28 U.S.C. § 1915A(b); 42 U.S.C. § 1997e(c)(1).

[2] In his earlier complaints, Plaintiff alleged that this incident occurred on April 28, 2016, but the 1-day difference does not affect my analysis.

was no longer a gang member.  (*Id.* at ¶¶ 11, 13-14.)  Defendants Borg and Patoe placed Plaintiff [in TCC] for the sole purpose to enable them to attempt to extort information from him."  (*Id.* at ¶ 17.)  Plaintiff also assert that that Defendants had a "policy, practice and custom of retaliation" and that he can establish a "pattern of retaliation involving multiple inmates who were subjected to the same type of adverse treatment."  (*Id.* at ¶¶ 21-22, 27.)  In this vein, Plaintiff contends that Defendants Borg and Patoe "are part of a gang of corrupt and rogue correctional officers who engage in deceitful and unconstitutional practices and retaliatory conduct generally directed toward minorities."  (*Id.* at ¶ 29.)

 Plaintiff further contends that "the retaliation for challenging the initial April 28, 2016 placement [in TCC] is on[-]going to this very day."  (*Id.* at ¶ 23.)  Plaintiff asserts that "[o]n May 14, 2019 once again Plaintiff was informed that he would be moved off his housing unit once again.  *Id.* at ¶ 24.  Plaintiff asserts that "[i]n mid[-]July 2019 Plaintiff was moved from housing unit 2-C to housing unit 3-C."  (*Id.* at ¶ 25.)  Subsequently, "[o]n August 6, 2019 Plaintiff was transferred from the New Jersey State Prison to South Woods State Prison."  (*Id.* at ¶ 26.)  Plaintiff asserts that he is being subjected to retaliatory transfers "for refusing to provide statements or talk to Defendants Patoe and Borg."  (*Id.* at ¶ 28.)  Later in the Third Amended Complaint, Plaintiff asserts that Defendants retaliated against him by "continually transferring him from housing unit to housing unit and thereafter transferring him from New Jersey State Prison to South Woods State Prison[,]" (*id.* ¶ 46), but the Third Amended Complaint describes only one change in housing unit.  Plaintiff also asserts that he was subjected to retaliation for the filing of grievances and this legal action.  (*See id.* at ¶¶ 38-39.)

Plaintiff purportedly brings this action pursuant to the First, Eighth, and Fourteenth Amendments and "the Equal Protection Clause of the United States Constitution" as well as "the

New Jersey Constitutions" [sic].  (*See id.* at ¶¶ 30-32.)  He appears to seek declaratory and injunctive relief to stop the alleged retaliation and possibly damages.  (*Id.* at ¶¶ 35, 48.)

## II.   LEGAL STANDARD

In resolving a motion to dismiss for failure to state a claim, under Rule 12(b)(6), "'courts accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief.'"  *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (quoting *Phillips v. County of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008)); *see also Zimmerman v. Corbett*, 873 F.3d 414, 417–18 (3d Cir. 2017), *cert. denied* 138 S. Ct. 2623 (2018); *Revell v. Port Auth. of N.Y. & N.J.*, 598 F.3d 128, 134 (3d Cir. 2010).

As a pro se litigant, Plaintiff is entitled to liberal construction of his complaint.  *See Liggon–Redding v. Estate of Sugarman*, 659 F.3d 258, 265 (3d Cir. 2011).  To survive dismissal under Rule 12(b)(6), a complaint "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678 (internal quotation marks and citation omitted).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

## III.   DISCUSSION

### a.   Federal Claims Pursuant to 42 U.S.C. § 1983

The gravamen of Plaintiff Third Amended Complaint appears to be that Moving Defendants retaliated against him for refusing to speak with them about gang activity at NJSP and for his filing of grievances and this lawsuit.  The Moving Defendants first placed him in TCC in April 2016 for approximately a week and subsequently transferred him to a new housing

unit and a new prison.  Plaintiff additionally asserts due process and equal protection violations

under the Fourteenth Amendment, as well as cruel and unusual punishment under the Eighth

Amendment stemming from the same alleged misconduct.  Finally, Plaintiff appears to assert

that the misconduct occurred a part of a policy, practice, or custom of the Moving Defendants.[3]

### i.  Due Process and Equal Protection Claims

I first address Plaintiff's allegations that the April 2016 placement in TCC and the July

and August 2019 transfers violate his due process and equal protection rights under the

Fourteenth Amendment.

In analyzing a due process claim, the threshold question is whether the complaining party

has been deprived of a protected liberty or property interest.  *See Shoats v. Horn*, 213 F.3d 140,

143 (3d Cir. 2000).  In the prison context, due process protection is limited to those situations

where the deprivation rises to the level of an "atypical and significant hardship on the inmate in

relation to the ordinary incidents of prison life."  *Sandin v. Conner*, 515 U.S. 472, 484 (1995).

I will grant the motion to dismiss as to Plaintiff's claim that his April 2016 placement in

administrative segregation violates due process, as it is foreclosed by the Supreme Court's

decision in *Sandin v. Conner*, 515 U.S. 472 (1995).[4]   There, the United States Supreme Court

---

[3] Plaintiff has sued Moving Defendants in their official capacities for injunctive relief.  Under *Ex parte Young*, 209 U.S. 123 (1908), a state official may be sued in his or her official capacity for prospective injunctive relief. *See Coll. Sav. Bank v. Fla. Prepaid Postsecondary Educ. Expense Bd.*, 527 U.S. 666, 670 (1999); *Koslow v. Pennsylvania*, 302 F.3d 161, 168 (3d Cir. 2002). I do not construe Plaintiff to seek damages from Moving Defendants in their official capacities.  Any damages claims against Moving Defendants are brought against them in their personal capacities.

[4] *Sandin* involved a § 1983 suit brought by a state prisoner against several prison officials alleging that they had violated his constitutional right to procedural due process by sentencing him to disciplinary segregation without permitting him to call certain witnesses. *See* 515 U.S. at 476. The Supreme Court noted in *Sandin* that under the procedure previously followed, if the Due Process Clause itself did not confer a liberty interest in a particular prison situation, the federal courts would proceed to "examin[e] ... the possibility that the State had created a liberty

held that placement in administrative confinement will generally not create a liberty interest. *See Griffin v. Vaughn*, 112 F.3d 703, 706 (3d Cir.1997) (applying *Sandin* and holding that 15 month detention in administrative custody did not implicate liberty interest). Plaintiff's placement in TCC for approximately a week is not meaningfully distinguishable from the circumstances in *Sandin*, and, thus, Plaintiff does not assert a liberty interest for which he is entitled to due process protection.[5]

Plaintiff's claim that the July 2019 housing change and August 2019 transfer to a different prison violates due process fails for the same reason, as Plaintiff has no liberty interest in being confined at a particular prison, *see Olim v. Wakinekona*, 461 U.S. 238, 245–46 (1983), or in his housing assignment. *See Thomas v. Rosemeyer*, 199 F. App'x. 195, 198 (3d Cir. 2006).

Plaintiff also appears to assert that Moving Defendants placed him in TCC in April 2016, and transferred him to a different housing unit in July 2019 and to a different prison in August

---

interest by virtue of its prison regulations...." *Id.* at 480 (explaining the approach taken by the Court in *Hewitt v. Helms*, 459 U.S. 460 (1983)). The Supreme Court substantially modified that analysis in *Sandin*, holding that an examination of a state statute or regulation should not be conducted unless the challenged restraint on freedom "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Id.* at 484. Applying this approach to the facts of the case before it, the Court held that "[the prisoner's] discipline in segregated confinement did not present the type of atypical, significant deprivation in which a State might conceivably create a liberty interest," inasmuch as "[t]he regime to which [the prisoner] was subjected ... was within the range of confinement to be normally expected for one serving an indeterminate term of 30 years to life." *Id.* at 486–87.

[5] The Supreme Court's opinion in *Sandin* makes clear, however, that the decision does not foreclose other claims challenging the constitutionality of official actions. Specifically, it states:

> Prisoners ..., of course, retain other protection from arbitrary state action even within the expected conditions of confinement. They may invoke the First and Eighth Amendments and the Equal Protection Clause of the Fourteenth Amendment where appropriate, and may draw upon internal prison grievance procedures and state judicial review where available.

*Id.* at 487 n. 11.

2019, because he is a member of a racial minority group, thus violating his right to equal protection of the law.  The Equal Protection Clause of the Fourteenth Amendment protects prisoners from invidious discrimination based on race.  *Wolff v. McDonnell*, 418 U.S. 539, 556 (1974).  "In order to raise a valid equal protection claim, a plaintiff must show that 'he has been treated differently from others with whom he is similarly situated and that the unequal treatment was the result of intentional or purposeful discrimination.'"  *Dickens v. Taylor*, 464 F. Supp 2d 341, 354–55 (D. Del. 2006) (quoting *Morrison v. Garraghty*, 239 F.3d 648, 654 (4th Cir.2001)).  Here, Plaintiff allegations of race discrimination are conclusory at best, and he provides no facts showing that he was treated differently from others who are similarly situated to him or was placed in TCC or transferred to a different housing unit or different prison on account of race.  As such, he fails to adequately plead an equal protection claim, and I will grant the motion to dismiss as to this claim.

### ii.  First Amendment Retaliation Claims

In a First Amendment retaliation claim, the relevant question is not whether Plaintiff has a protected liberty interest in the privileges he was denied, but whether he was denied those privileges in retaliation for exercising a constitutional right.  *See Rauser v. Horn*, 241 F.3d 330, 333 (3d Cir. 2001).  In *Allah v. Seiverling*, 229 F.3d 220, 224–25 (3d Cir. 2000), the Third Circuit held that "government actions, which standing alone do not violate the Constitution, may nonetheless be constitutional torts if motivated in substantial part by a desire to punish an individual for the exercise of a constitutional right." (quoting *Thaddeus–X v. Blatter*, 175 F.3d 378, 386 (6th Cir. 1999) (en banc)).  Thus, a prisoner litigating a retaliation claim need not prove that he had an independent liberty interest in the privileges he was denied.  *See Rauser*,  F.3d at 333.

In order to state a prima facie case of First Amendment retaliation, a prisoner must plausibly allege that: (1) he engaged in constitutionally protected conduct; (2) he suffered an adverse action sufficient to deter a person of ordinary firmness from exercising his constitutional rights; and (3) the constitutionally protected conduct was "a substantial or motivating factor" for the adverse action.  *See Rauser*, 241 F.3d at 333.

Here, Plaintiff asserts a constitutionally-protected right <u>not</u> to speak to Moving Defendants about gang activity at NJSP.  "[A]n inmate's constitutional rights are 'necessarily limited.'" *Newman v. Beard*, 617 F.3d 775, 781 (3d Cir. 2010) (quoting *Waterman v. Farmer*, 183 F.3d 208, 213 (3d Cir. 1999)).  Nevertheless, "it is settled law that an inmate 'retains those First Amendment rights that are not inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system.'" *Id.* (quoting *Pell v. Procunier*, 417 U.S. 817, 822 (1974)).  Generally, "the right of freedom of thought protected by the First Amendment against state action includes both the right to speak freely and the right to refrain from speaking at all."  *Wooley v. Maynard*, 430 U.S. 705, 714 (1977); *see also Riley v. National Federation of the Blind of North Carolina, Inc.,* 487 U.S. 781, 796–97 (1988) ("the First Amendment guarantees 'freedom of speech,' a term necessarily comprising the decision of both what to say and what not to say." (emphasis in original).  Here, I assume without deciding that Plaintiff's refusal to speak to Moving Defendants about gang activity at NJSP is an activity protected by the First Amendment.[6]  *See, e.g.*, *Burns v. Martuscello*, 890 F.3d 77, 84 (2d Cir. 2018) ("We now hold that the First Amendment protects a prisoner's right not to serve as an informant.").

---

[6] I note that Moving Defendants do not appear to appreciate that the protected activity implicates the prohibition on compelled speech.  Because Plaintiff fails to plead the remaining elements of a retaliation claim, I will nevertheless grant the motion to dismiss.

Plaintiff also asserts in passing that Moving Defendants retaliated against him for filing grievances and filing this lawsuit.  It is well established that a prisoner's filing of grievances and lawsuits is protected activity under the First Amendment.  *See Smith v. Mensinger*, 293 F.3d 641, 653 (3d Cir. 2002).

Next, I consider whether Petitioner has plausibly alleged that he suffered any adverse action sufficient to deter a person of ordinary firmness from exercising his constitutional rights, *see Rauser*, 241 F.3d at 333, and finds that he has not sufficiently alleged this element.  Pursuant to *Allah v. Seiverling*, 229 F.3d at 225, whether placement in administrative segregation would deter a person of ordinary firmness from exercising his or her First Amendment rights depend on the facts of the particular case.  *Id.* (finding that allegations that plaintiff was kept in administrative segregation for several months where he had reduced access to phone calls, reduced access to the commissary, reduced access to recreation, confinement in his cell for all but five hours per week, denial of access to rehabilitative programs and, significantly, inadequate access to legal research materials and assistance was sufficiently adverse).

I previously found that Plaintiff's bare allegation that he was placed in TTC for eight days, without more, is not sufficiently "adverse" to sustain a First Amendment retaliation claim. Petitioner has provided no further facts in the Third Amended Complaint showing that the brief placement in TCC was sufficiently adverse to support a retaliation claim.

Instead, Petitioner asserts that more than three years after his allegedly retaliatory eight-day placement in TCC, "in mid[-]July 2019,  Plaintiff was moved from housing unit 2-C to housing unit 3-C."  (Third Amended Complaint at ¶ 25.)  Subsequently, "[o]n August 6, 2019 Plaintiff was transferred from the New Jersey State Prison to South Woods State Prison."  (*Id.* at ¶ 26.)  Plaintiff has not provided any facts showing that the move from housing unit 2-C to

housing unit 3-C constitutes an adverse action.  Nor has he provided any facts showing that the transfer from NJSP to SWSP constitutes an adverse action.  *See Collazo v. Rozum*, 646 F. App'x. 274, 276 (3d Cir. 2016) (affirming dismissal of prisoner's First Amendment retaliation claim where he failed to explain how prison transfer was an adverse action) (citing *Allah*, 229 F.3d at 225).

With respect to his retaliation claims, Plaintiff must also allege a causal link between his protected activity or activities and the alleged retaliatory transfers.  *See, e.g., Wisniewski v. Fisher*, 857 F.3d 152, 157 (3d Cir. 2017).  "To establish the requisite causal connection a plaintiff usually must prove either (1) an unusually suggestive temporal proximity between the protected activity and the allegedly retaliatory action, or (2) a pattern of antagonism coupled with timing to establish a causal link."  *See Lauren W. ex rel. Jean W. v. DeFlaminis*, 480 F.3d 259, 267 (3d Cir.  2007) (quoting *Krouse v. American Sterilizer Co.*, 126 F.3d 494, 503–04 (3d Cir. 1997)); *see also Wisniewski*, 857 F.3d at 157 n.4 (stating that a prisoner-plaintiff asserting First Amendment retaliation must adequately allege facts to support causation at the pleading stage).

Here, Plaintiff has provided no facts showing that there is "an usually suggestive temporal proximity" between his protected activity and any of the alleged retaliatory actions. The alleged "pattern of antagonism" includes a more than three-year gap between the Plaintiff's placement in TCC in April 2016 and the alleged retaliatory transfers, which occurred in July August of 2019.  And, Plaintiff likewise fails to provide any facts showing that his April 2016 placement in TCC or the July and August 2019 transfers occurred shortly after he refused to speak to Borg and Patoe about gang activity at NJSP or shortly after he filed grievances or this lawsuit.  Nor does he provide any other facts from which I could find that his placement in TCC or the transfers were causally connection to any of Plaintiff's protected First Amendment

activities.  As such, Plaintiff has not adequately pleaded a causal link between his protected activities and his April 2016 placement in TCC or the alleged retaliatory transfers in July and August 2019.

Because Plaintiff fails to plead the second and third elements of First Amendment retaliation, he fails to state a claim for relief under Fed. R. Civ. P. 12(b)(6), and I will grant the motion to dismiss the First Amendment retaliation claims.

### iii.   Eighth Amendment Claims

Plaintiff also appears to assert that his April 2016 placement in TCC and the July and August 2019 transfers violate the Eighth Amendment.  The relevant Eighth Amendment inquiry is whether a convicted prisoner has been deprived of the "minimal civilized measure of life's necessities." *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). This requires an allegation that the prisoner has been denied "basic human needs, such as food, clothing, shelter, sanitation, medical care and personal safety" from physical assault. *Griffin*, 112 F.3d at 709.  Here, Plaintiff's brief placement in TCC does not violate the Eighth Amendment *see id.* (placement of a prisoner in administrative custody for 15 months did not involve the deprivation of any basic human need under the Eighth Amendment), and the transfers in July and August 2019 likewise do not violate the Eighth Amendment absent allegations that he was also denied any basic human needs or personal safety.  *See Thomas*, 199 F. App'x. at 198 (affirming dismissal of Eighth Amendment claim premised on prison transfer where prisoner provided no facts suggesting that he was denied basic human needs such as food, clothing, shelter, sanitation, medical care, or personal safety).

### iv.  Policy or Custom Claims

Finally I will grant the motion to dismiss as to the § 1983 claim premised on the policy, practice, or custom of retaliating against plaintiff.  A supervisor-defendant may be liable for unconstitutional acts undertaken by subordinates if the supervisor-defendant "with deliberate indifference to the consequences, established and maintained a policy, practice or custom which directly caused [the] constitutional harm."  *A.M. ex rel. J.M.K. v. Luzerne Cnty. Juvenile Det. Ctr.*, 372 F.3d 572, 586 (3d Cir. 2004) (alteration in original); *Barkes v. First Correctional Medical, Inc.*, 766 F.3d 307, 316 (3d Cir. 2014).  Here, Plaintiff provides only conclusory allegations that Moving Defendants have a policy, practice, or custom of retaliating against him, and he fails to plead a cognizable retaliation claim in the first instance.  As such, this claim is dismissed.

### v.  The Court will Deny Leave to Amend the Federal Claims

I have provided Plaintiff with three opportunities to amend his original complaint in this action, and each time I have dismissed the complaint for failure to state claim on a either a motion to dismiss or under my screening authority.  Having provided Plaintiff with repeated opportunities to amend his federal claims, I decline to permit him to submit any additional amended complaints in this matter.[7]  *See Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108 (3d Cir. 2002); *Godfrey v. Pennsylvania*, 525 F. App'x. 78, 81 (3d Cir. 2013).

---

[7] Plaintiff's federal claims related to the July and August 2019 transfers arose <u>after</u> the filing of this action in 2017 and are therefore supplemental pleadings governed by Fed. R. Civ. P. 15(d).  I did not provide leave to amend to add these supplemental claims, and Plaintiff did not file a motion to amend/supplement as directed by the Court.  Although the Court will not permit any additional amendments in this action, the dismissal of claims arising from the July and August 2019 transfers are without prejudice, and Plaintiff is free to file <u>a new federal action</u> with respect to his July and August 2019 transfers, with the appropriate filing fee or application to proceed *in forma pauperis*, to the extent he can cure the deficiencies in these claims.

**b. State Law Claims**

Plaintiff also attempts to bring claims for relief under the New Jersey Constitution. Because I have dismissed the federal claims and denied leave to amend in this action, the remaining potential basis for this Court's jurisdiction over Plaintiff's remaining state law claims is supplemental jurisdiction pursuant to 28 U.S.C. § 1367. "Supplemental jurisdiction allows federal courts to hear and decide state-law claims along with federal-law claims when they are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy." *Wisconsin Dept. of Corrections v. Schacht*, 524 U.S. 381, 387 (1998) (citation and internal quotation marks omitted). Where a district court has original jurisdiction pursuant to 28 U.S.C. § 1331 over federal claims and supplemental jurisdiction over state claims pursuant to 28 U.S.C. § 1367(a), the district court has discretion to decline to exercise supplemental jurisdiction if it has dismissed all claims over which it has original jurisdiction. 28 U.S.C. § 1367(c)(3); *Growth Horizons, Inc. v. Delaware County, Pennsylvania*, 983 F.2d 1277, 1284–1285 (3d Cir. 1993). In exercising its discretion, "the district court should take into account generally accepted principles of 'judicial economy, convenience, and fairness to the litigants.'" *Growth Horizons, Inc.*, 983 F.2d at 1284 (quoting *United Mine Workers v. Gibbs*, 383 U.S. 715, 726 (1966)). Where the federal claims are dismissed at an early stage in the litigation, courts generally decline to exercise supplemental jurisdiction over state claims. *United Mine Workers*, 383 U.S. at 726; *Growth Horizons*, Inc., 983 F.2d at 1284–1285.

Here, the Court grants the motion to dismiss as to the federal claims for relief, declines supplemental jurisdiction, and remands the matter to the Superior Court of New Jersey, Law Division, Mercer County.

**IV.**     **CONCLUSION**

For the reasons expressed in this Opinion, Plaintiff's Complaint is dismissed for failure to state a federal claim under Fed. R. Civ. P. 12(b)(6) and the Court denies further leave to amend the federal claims; the Court declines supplemental jurisdiction over any remaining state law claims, and the Court remands the matter to the Superior Court of New Jersey Law Division, Mercer County.  An appropriate Order follows.

DATED:  May 19, 2020                                   /s/ Freda L. Wolfson
                                                                   FREDA L. WOLFSON
                                                                   U.S. Chief District Judge